**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**FILED**

SEP 3 0 2003

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN RE BAAN COMPANY SECURITIES
LITIGATION

)
)
)
)
)

Civil Action No. 98-2465(ESH)

**MEMORANDUM OPINION REGARDING
AWARD OF ATTORNEYS' FEES AND EXPENSES**

This is a class action brought on behalf of all persons or entities who purchased or otherwise acquired the securities of Baan Company between January 28, 1997 and October 12, 1998. On June 26, 2003, counsel for Lead Plaintiffs and Defendants entered into a Settlement Agreement, which provides for the settlement of the case in exchange for the payment by Defendants of $32.5 million, plus interest from August 15, 2003 (hereinafter, the "Gross Settlement Fund").

Plaintiffs' Counsel has moved for an award of attorneys' fees for services rendered in this case in an amount equal to 32% of the Gross Settlement Fund (*i.e.*, $10.4 million), together with reimbursement of costs and expenses in the amount of $1,241,098.77. After a hearing before the Court held on September 30, 2003, and upon due consideration of the briefs, submissions and the prior proceedings, the Court will grant Counsel's motion in part and will award attorneys' fees in the amount of $9.1 million, representing 28% of the Gross Settlement Fund, plus reimbursement of litigation expenses in the amount of $1,241.098.77. In making this determination, the Court makes the following findings of fact and conclusions of law:





I.    **The Fee Request**

1.    Courts have recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980); Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261 (D.C. Cir. 1993); In re Lorazepam & Clorazepate Antitrust Litig., 2003 U.S. Dist. LEXIS 12344, at *1 (D.D.C. June 16, 2003). The "common fund doctrine" allows an attorney whose efforts created, increased or preserved a fund "to recover from the fund the costs of his litigation, including attorneys' fees." Vincent v. Hughes Air West, Inc., 557 F.2d 759, 769 (9th Cir. 1977).

2.    "When awarding attorneys' fees, federal courts have a duty to ensure that claims for attorneys' fees are reasonable." Swedish Hosp.,1 F.3d at 1265.  This mandate is also required for federal securities class actions brought under the Private Securities Litigation Reform Act of 1995 ("PSLRA") . See 15 U.S.C. § 78u-4(a)(6).

3.    In determining reasonable attorneys' fees, two different approaches have generally been employed: the percentage method and the "lodestar" method. See Report of the Third Circuit Task Force, "Court Awarded Attorney Fees." 108 F.R.D. 237 (1986).  Pursuant to Swedish Hospital and its progeny, this Circuit has elected to use the percentage method. See Swedish Hosp., 1 F.3d at 1271 ("In sum, we join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases."); In re: Newbridge Networks Sec. Litig., 1998 U.S. Dist. LEXIS 23238, at *10 (D.D.C., Oct. 23, 1998) ("In this

Circuit, attorneys' fees are calculated according to 'a percentage-of-the-fund method'.") (citation omitted).

4.    Pursuant to <u>Swedish Hospital</u>, this Court has considerable latitude on the issue of reasonableness, but as noted by the Circuit, "a majority of common fund class action fee awards fall between twenty and thirty percent." 1 F.3d at 1272.

5    Courts have looked to several factors in assessing the reasonableness of a fee request, including: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. <u>In re Lorazepam & Clorazepate</u>, 2003 U.S. Dist. LEXIS 12344, at *27.

6.    With respect to the first factor, the $32.5 million settlement fund represents a substantial recovery for Class members. In addition, the fund is over 16% of Plaintiffs' estimated damages in a best case scenario; between 32.5% and 54% of Defendants' estimated damages; and substantially exceeds the median settlement of 3.6% of estimated damages in similar class actions brought under the PSLRA. Moreover, since over 17,500 notices were mailed to potential members of the Class, it is likely that the settlement fund will inure to the benefit of a sizeable number of Baan investors that sustained damages as a result of Defendants' alleged misconduct. <u>See</u> <u>In re Vitamins Antitrust Litig.</u>, 2001 U.S. Dist. LEXIS 25067, at *62 (D.D.C. July 16, 2001) ("Courts have regarded exceptional benefits to a large class as grounds for a higher fee award").

7.    Also noteworthy is the fact that only one objection to counsel's application for attorneys' fees has been filed. According to that objector, Plaintiffs' Counsel should be entitled to only 20% of the settlement fund because that is what the Court awarded in <u>Swedish Hospital</u>. In making this assertion, however, neither the objector nor his counsel apparently reviewed the briefs and declarations of Plaintiffs' Counsel filed on September 3, 2003, and thus, they are unaware of the work and effort devoted to this case by Plaintiffs' Counsel. The objector also seems to be unaware of the actual percentage requested by counsel and provides no principled basis for imposing a 20% cap on the recovery of fees. Given the absence of any helpful factual or legal analysis, the Court finds that the objection is of no value to the Court in making its determination, and it is therefore overruled.

8.    In addition, this was undeniably a challenging and complex case. Plaintiffs' Counsel had to review and analyze thousands of financial and accounting documents regarding Baan's many transactions with affiliated parties that were in dispute. Plaintiffs' Counsel had to master complicated accounting principles regarding the accounting treatment to be accorded to sales of Baan's software licenses. Plaintiffs' Counsel also had to address difficult and novel legal questions resulting from Vanenburg's and Baan's incorporation in the Netherlands, such as the interpretation and impact of Dutch law on the conduct of the named Defendants; the enforceability of judgments in the United States against Netherlands companies; and the Court's jurisdiction over Netherland's residents.

9.    There was also a substantial risk that Plaintiffs' Counsel would not be paid for their efforts. There were many factors that could have eliminated any chance of recovery in this case, including the precarious financial condition of the London-based company that purchased Baan in 2001; the deteriorating state of Baan's directors' and officers' insurance policy; the

-4-

uncertainty concerning enforcement of United States judgments in the Netherlands; and the absence of a prominent regulatory investigation to spearhead claims against the Company.

10.    There were also serious risks associated with proving Plaintiffs' claims at trial. For example, Plaintiffs' ability to prove Defendants' knowing misconduct would have been exceedingly difficult given that several accounting firms had approved the financial statements and third-party transactions that Plaintiffs had alleged were improperly reported and disclosed. Plaintiffs also faced formidable loss causation hurdles because the disclosures at the end of the Class Period that resulted in a sharp decline in the price of Baan's securities were not clearly related to the alleged fraud at issue in the case.   Thus, this was a situation where success was not in any way assured.  To the contrary, there were a number of liability and collectablity issues that rendered prosecution of this case uncertain and may have resulted in Plaintiffs' Counsel receiving no recovery at all.

11.    The Court also finds that Plaintiffs' Counsel devoted a substantial amount of time and effort to this case.   There were over 25 depositions taken in this case, including those of the Lead Plaintiffs, the named Defendants, former employees of Baan, representatives of Vanenburg, and Baan's outside auditors.   The depositions were held in different locations throughout the country, as well as in the Netherlands.   In addition, over 300,000 pages of documents were reviewed and analyzed by Plaintiffs' Counsel and their experts.  There was also considerable motions practice during the almost five-year pendency of this case concerning such matters as: (i) the viability of Plaintiffs' claims under Rule 12(b)(6); (ii) the certification of a class for purposes of Federal Rule 23; (iii) the Court's jurisdiction over non-resident Defendants; (iv) the appointment of Lead Plaintiffs and Lead Counsel under the PSLRA; (v) the number of depositions available under the Court's local rules; and (vi) the appropriate scope of

jurisdictional discovery under the PSLRA.   But as noted in ¶ 16, some of this extensive motions

practice could have been reduced or eliminated had counsel been more diligent.  Plaintiffs'

Counsel also pursued discovery overseas through the Hague Convention; subpoenaed and

reviewed documents from Baan's investment bankers; and interviewed former Baan employees.

12.     In total, Plaintiffs' Counsel have reported spending over 16,900 hours on the case,

representing an aggregate lodestar of $4,972,485 at historical rates, and $5,418,056.60 at current

rates.  The Court finds these figures are on the high side given the tortured history of this case,

but they are not out of line given the duration of the case, the number of parties involved, the

zealousness of defense counsel, and the magnitude of the work required.

13.     The Court also notes that the requested percentage award of 32% is at the high

end of the scale, although it is in line with awards in class actions from this and other districts.

For example, in Lorazepam & Clorazepate, an antitrust class action, the court awarded attorneys'

fees representing 30% of a $35 million settlement fund.  As in this case, plaintiffs' counsel in

Lorazepam engaged in "extensive motion practice and conducted considerable discovery" over

an approximate four-year period.  2003 U.S. Dist. LEXIS 12344, at *29.   Similarly, in In re

Newbridge Networks, a securities class action, the Court granted the plaintiffs' counsel's request

for 30% of a $4.3 million settlement fund.  1998 U.S. Dist. LEXIS 23238, at *12.  In addition, a

higher award was granted in In re Vitamins Antitrust Litig., where the Court awarded

approximately 34% of a settlement fund calculated to be approximately $360 million.  2001 U.S.

Dist. LEXIS 25067, at *55, 68.  In finding a 34% award to be reasonable, the Court emphasized

the record size of the settlement (id. at *61-62); the experience and professionalism

of counsel (id. at *62); and the instigation of regulatory proceedings substantially after counsel
had completed their investigation. (Id. at *63.)[1]/

14.    To be sure, there are cases where lower percentages have been awarded.  In this
district, for example, the trial judge in Swedish Hospital approved an award of 20%, which was
later affirmed on appeal.   However, the circumstances warranting an award of 20% in Swedish
Hospital are unlike those present here.  As the Court found in that case, for example, plaintiffs'
attorneys had partly "piggyback[ed]" on the success of a related litigation; faced no chance of
zero recovery because the central legal issue had been resolved in that related action; faced no
collectability issues because the government was the defendant; and did not have to litigate a
motion for class certification because the government had "acquiesced" to class action treatment.
Swedish Hosp., 1 F.3d at 1264.  In this case, by contrast, Plaintiffs' Counsel developed and
prosecuted the case on their own without assistance from a governmental agency; confronted a
risk of no recovery given the many disputed legal and factual issues that may ultimately have
been resolved in Defendants' favor; faced a whole series of collectability risks that may have
completely nullified any judgment secured after trial; and confronted sharp resistence getting the
case certified as a class action under Federal Rule 23.  Given that the risks and hurdles faced by
Plaintiffs' Counsel in this case were more substantial than those in Swedish

_____

[1]/    For instance, several courts in securities class actions have awarded attorneys'
fees of up to one-third of a settlement fund.  See, e.g., Maley v. Del Global Techs. Corp., 186 F.
Supp.2d 358 (S.D.N.Y. 2002); In re: Unisys Corp. Sec. Litig., 2001 WL 1563721, at *4 (E.D.
Pa. Dec. 6, 2001); Retsky Family Ltd. P'ship. v. Price Waterhouse LLP, 2001 WL 1568856, at
*3 (N.D. Ill. Dec 10, 2001).  The Court also notes that in a study of 289 settlements ranging
from under $ 1 million to $ 50 million, "the average attorney's fees percentage is shown as
31.71%, and the median turns out to be one-third."  In re: Rite Aid Corp. Sec. Litig., 146 F.
Supp.2d 706, 735 (E.D. Pa. 2001).

Hospital and other class actions where liability and collectability appear far less problematic, the Court believes that an award that is higher than that granted in Swedish Hospital is appropriate.

15.    The Court has also reviewed Plaintiffs' Counsel reported lodestar (even though not required in this Circuit under Swedish Hospital), and finds that a multiplier of 2.0 or less falls well within a range that is fair and reasonable. Compare In re Lorazepam & Clorazepate, 2003 U.S. Dist. LEXIS 12344, at *32 (awarding 30% of fund, which translated to a multiple of between 1.15 and 1.36); In re Ikon Office Solutions, Inc. Sec. Litig., 194 F.R.D. 166 (E.D. Pa. 2000) (awarding 30% of fund, which translated to a multiple of 2.46); Maley, 186 F. Supp.2d at 369 (awarding 33 1/3% of fund, which translated to a multiple of 4.65); In re: Rite Aid Corp. Sec. Litig., 146 F. Supp.2d at 736 (awarding 25% of fund, which translated into a multiple of between 4.5 and 8.5).

16.    Although many of the above factors argue in favor of the 32% request by Plaintiffs' Counsel, the Court, being mindful of what the Court in Swedish Hospital considered to be a reasonable award of fees (20%-30%), must regrettably turn to the issue of Plaintiffs' Counsel's performance in this case. While Plaintiffs' Counsel often prosecuted this case with skill and efficiency, the Court is disinclined to grant Plaintiffs' Counsel's total request given that there were excessive delays and inefficiencies that plagued this litigation, and these were due in large part to counsel's less than exemplary performance on several occasions. In this regard, the Court acknowledges, as argued by counsel, that they successfully defeated several motions to dismiss Plaintiffs' Amended Complaint both on substantive and jurisdictional grounds; identified key documents supporting Plaintiffs' claims for relief; coordinated and pursued discovery from parties and non-parties alike; and skillfully handled the settlement negotiations that led to an excellent recovery for the benefit of the Class.

-8-

Nonetheless, there were significant lapses over the course of this lengthy litigation that contributed unnecessarily to its protracted and complex nature.  This case was commenced in 1998.  Because of plaintiffs' delay in filing for class certification, the Honorable Joyce Hens Green, who previously presided over this case, struck the class allegations because of counsel's failure to comply with Local Rule 23.1(b).  See Memorandum Opinion (D.D.C. December 12, 2000) (JHG).  After extensive motions practice, Judge Green reversed her prior ruling and permitted plaintiffs to file a motion for class certification, finding that plaintiffs' failure to timely file the motion for class certification constituted inexcusable neglect.  See Memorandum Opinion (D.D.C. June 6, 2001) (JHG).  This reversal then produced additional motions for reconsideration by defendants.

In addition, Plaintiffs' Counsel failed to exhibit the required diligence with respect to the discovery, especially with regard to jurisdictional discovery.  A series of orders by Magistrate Judge John Facciola, who oversaw the discovery process, more than amply demonstrates Counsel's lack of zealousness.  See, e.g., Memorandum Opinion issued on April 10, 2002 (JMF).

Finally, and perhaps most significantly, the tortured history surrounding the appointment of lead plaintiffs and certification of a class was certainly exacerbated by Plaintiffs' Counsel's lack of diligence and inattention to this matter.  This history is set forth in detail in a series of orders issued in this case.  See, e.g., In re Baan Company Sec. Litig., 186 F.R.D. 214 (D.D.C. 1999) (JHG) ("Baan I"); 271 F. Supp. 2d 3 (D.D.C. 2002) (ESH) ("Baan III"); and Memorandum Opinion (D.D.C. July 19, 2002) (ESH) ("Baan IV").  The Court was forced to address the issue of lead plaintiffs on four occasions and the matter of class certification was confronted at least three times.  It was not until the fourth attempt that a class was finally certified in Baan IV on July 19, 2002, almost four years after this case was filed.  As noted in Baan IV, "the procedural

difficulties, which have been exacerbated by counsel's lack of diligence, have resulted in excessive delays and false starts." Id. at 16.  The Court's assessment was set forth candidly in that Opinion:

> [U]ntil recently, the performance of the lead firms in this case has been unimpressive.  Although both of the firms acting as lead counsel are more than capable of vigorously prosecuting this action and pursuing the interests of their clients, the inexcusable delays and missteps between 1999 and early 2002 that were largely attributable to plaintiffs' counsel indicated that, in fact, they were not performing their obligations in a diligent manner.  As a result of this state of affairs, this Court was highly critical of the effort put forth by plaintiffs' counsel in Baan III, as well as at the April 26 status conference. See, e.g., Transcript of April 26, 2002 Status Hearing at 26 ("I mean, frankly, the job that's been done to date is really sloppy.").  Magistrate Judge Facciola was even more outspoken. "I have never seen and I hope that I will never see again such utter mischaracterizations of what a witness actually said or such bold assertions based on absolutely nothing the witness said [as those by plaintiffs' counsel]." In re Baan Securities Litigation, Civil No. 98-2465, Report and Recommendation at 6 (D.D.C. June 11, 2002) (footnote omitted).

Id. at 12-13.

Because of what the Court perceived as significant deficiencies in counsel's performance, it imposed a highly unusual monthly reporting requirement on counsel so that the Court could be assured the counsel would faithfully comply with the dictates of the PSLRA. Order issued in Baan IV.

While counsel's performance did improve, the Court feels compelled to exercise its discretion to reduce the request for attorneys' fees to reflect the lack of the high level of professionalism and skill that one would ordinarily expect from the experienced counsel who were appearing in this case.  Given that Counsel here have requested a fee at the high end of the accepted range, the standard of performance to which they must necessarily be held increased in proportion. Because Counsel did not always rise to these expectations, the Court believes that it

is not appropriate to award the extraordinarily generous fees reserved for a truly exceptional performance.

      17.    Having said this and even though the Court has reduced counsel's fees from 32% to 28%, the Court might add that a recovery of over $9 million is, by anyone's definition, a generous award that more than adequately compensates counsel for the time expended and the risk undertaken, but at the same time it comports with the PSLRA's mandate that fees and expenses be limited to a "reasonable percentage" of any recovery. 15 U.S.C. § 78u-4(a)(b); see also In re Microstrategy, Inc., 172 F. Supp. 2d 778, 787 (E.D. Va. 2001).

## II.    Plaintiffs' Counsel's Request for Reimbursement of Litigation Expenses.

      18.    "Class counsel in common fund cases are also entitled to 'reasonable litigation expenses from that fund.'" In re First Databank Antitrust Litig., 209 F. Supp.2d 96, 98, fn. 4 (D.D.C. 2002). In this case, Plaintiffs' Counsel seek reimbursement of expenses totaling $1,241,099.77. These expenses were incurred in connection with, among other things, travel for depositions, photocopying, and long-distance telephone calls. The largest reported expense is for experts, which required the expenditure of over $787,500.

      19.    This was an extremely complex and time-consuming case involving many documents, many parties and many depositions. Moreover, much of the discovery took place overseas, requiring the retention of Netherlands counsel. In addition, Plaintiffs' Counsel retained several experts, including an accounting expert that played an active role in the document and deposition phase of the litigation. Accordingly, the Court finds that the request of Plaintiffs' Counsel for reimbursement of expenses is reasonable.

## III.    Conclusion

      20.    Having considered the relevant factors, pertinent case law and the goals of the PSLRA, the Court concludes that Plaintiffs' Motion for an Award of Attorneys' Fees and

Reimbursement of Expenses is **GRANTED IN PART**. The Court will reduce the requested attorneys' fees from 32% of the Gross Settlement Fund to 28% of that Fund and will therefore award $9.1 million in attorneys' fees, plus interest, and $1,241,098.77 in reimbursement for litigation expenses. For the reasons set forth above, the Court also finds that the single objection to the fee request is without merit and is hereby overruled. An Order accompanies this Memorandum Opinion.

_Ellen S Huvelle_

ELLEN SEGAL HUVELLE
United States District Judge

**DATE: September 30, 2003**

-12-